FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

3/4/2021
CLERK'S OFFICE
AT GREENBELT
BY _YB_, DEPUTY CLERK

PAR: 2020R00429

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. DKC-20-0248** |
| | * | |
| **KEON BALL and** | * | **(Wire Fraud Conspiracy, 18 U.S.C. §** |
| **ROBERT HOPKINS IV,** | * | **1349; Wire Fraud, 18 U.S.C. § 1343;** |
| | * | **Aggravated Identity Theft, 18 U.S.C.** |
| **Defendants.** | * | **§§ 1028A(a)(1) and (c)(5); Felon in** |
| | * | **Possession of A Firearm And** |
| | * | **Ammunition, 18 U.S.C. § 922(g)(1);** |
| | * | **Aiding and Abetting, 18 U.S.C. § 2,** |
| | * | **Forfeiture, 18 U.S.C. § 924(d)** |
| | * | **18 U.S.C. § 982(a)(2)(A)** |
| | * | **28 U.S.C. § 2461(c))** |

*******

## SUPERSEDING INDICTMENT
## COUNT ONE
### (Wire Fraud Conspiracy)

The Grand Jury for the District of Maryland charges that:

At all times material to the Indictment:

1.     Defendant **KEON BALL** was a resident of Baltimore, Maryland.

2.     Defendant **ROBERT HOPKINS IV** was a resident of Nottingham, Maryland.

3.     Lowe's Home Centers LLC ("Lowe's") is a home improvement retailer doing business throughout the United States.

4.     Synchrony Bank ("Synchrony") is a financial institution insured by the Federal Deposit Insurance Corporation and doing business throughout the United States.

5.     Lowe's maintains a program called Lowe's Account Receivable ("LAR").  LAR accounts are a commercial line of credit offered to business customers of Lowe's.  LAR accounts are offered and serviced by Synchrony.

6.     Lowe's customers with LAR accounts are able to purchase merchandise from

Lowe's using the line of credit from Synchrony associated with each of their LAR accounts.

7.     Jesco, Inc. ("Jesco") is a construction equipment retailer doing business throughout the Eastern part of the United States.

8.     John Deere Financial Services, Inc. ("John Deere Financial") is a subsidiary of Deere & Company, commonly known as John Deere, a company that manufactures, among other things, agricultural and construction equipment.

9.     Metro Bobcat, Inc. ("Metro Bobcat") is a construction equipment dealer located in White Marsh, Maryland.

10.     Wells Fargo Bank, N.A. ("Wells Fargo") is a financial institution insured by the Federal Deposit Insurance Corporation and doing business throughout the United States.

## The Conspiracy and the Scheme to Defraud

11.     Beginning in or about May 2018 and continuing until in or about October 2019, in the District of Maryland and elsewhere, the defendants,

**KEON BALL and**
**ROBERT HOPKINS IV,**

knowingly and willfully, conspired and agreed together and with others known and unknown to the Grand Jury to commit any offense under chapter 63 of Title 18, United States Code, namely, to knowingly and willfully devise and intend to devise a scheme and artifice to defraud businesses, including Lowe's, Synchrony, Jesco, John Deere Financial, Metro Bobcat, and Wells Fargo, and to obtain and attempt to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted

2

by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### Object of the Conspiracy and Scheme to Defraud

12.     It was the object of the conspiracy and scheme to defraud that the defendant **KEON BALL** used the means of identification of various victims to open LAR accounts that were then used by defendants **KEON BALL** and **ROBERT HOPKINS IV** to obtain more than $250,000 worth of merchandise on credit for their own personal use and benefit, and for the personal benefit and use of their associates.

13.     It was a further object of the conspiracy and scheme to defraud that defendants **KEON BALL** and **ROBERT HOPKINS IV** used the means of identification of victim "D.B." to obtain more than $225,000 of heavy construction equipment from Jesco and Metro Bobcat by means of loans from John Deere Financial and Wells Fargo for their own personal use and benefit, and for the personal benefit and use of their associates.

### Manner and Means of the Conspiracy and Scheme to Defraud

14.     It was part of the conspiracy and scheme to defraud that on or about May 4, 2018, the defendant **KEON BALL**, alone or in concert with others, submitted a false and fraudulent application for a Lowe's LAR account from Synchrony, using the name and identity information of "JS" including the exact date of "JS's" birthdate in year 1953 and "JS's" social security number ending in 9377.  Synchrony approved the application and established an LAR account ending in 6839.

15.     It was further part of the conspiracy and scheme to defraud that on or about August 25, 2018, the defendant **KEON BALL**, alone or in concert with others, submitted a false and fraudulent application for a Lowe's LAR account from Synchrony, using the name and identity

information "JL" including the exact date of "JL's" birthdate in year 1976 and "JL's" social security number ending in 7354.  Synchrony approved the application and established an LAR account ending in 6498.

16.     It was further part of the conspiracy and scheme to defraud that on or about September 20, 2018, the defendant **KEON BALL**, alone or in concert with others, submitted a false and fraudulent application for a Lowe's LAR account from Synchrony, using the name and identity information "RB" including the exact date of "RB's" birthdate in year 1977 and "RB's" social security number ending in 6048.  Synchrony approved the application and established a LAR account ending in 7576.

17.     It was further part of the conspiracy and scheme to defraud that on or about October 14, 2018, the defendant **KEON BALL**, alone or in concert with others, submitted a false and fraudulent application for a Lowe's LAR account from Synchrony, using the name and identity information "JE" including the exact date of "JE's" birthdate in year 1980 and "JE's" social security number ending in 1345.  Synchrony approved the application and established a LAR account ending in 8690.

18.     It was further part of the conspiracy and scheme to defraud that in or about 2018, **KEON BALL**, obtained a counterfeit South Carolina Driver's License bearing the name of "JL" and the photograph of the defendant, **KEON BALL**, the year of birth of 1976, and the license number ending in 2065.

19.     It was further part of the conspiracy and scheme to defraud that in or about May 2018, through in or about October 2018, the defendant **KEON BALL** purchased merchandise from Lowe's locations in the District of Maryland using lines of credit from the LAR accounts he fraudulently established in the names of "JS," "JL," "RB," and "JE," resulting in interstate wires,

4

including wires to and from Maryland.

20.     It was further part of the conspiracy and scheme to defraud that on or about September 21, 2018, the defendant **ROBERT HOPKINS IV** purchased merchandise from a Lowe's location in the District of Maryland using a line of credit from the LAR account fraudulently established in the name of "RB," resulting in interstate wires, including wires to and from Maryland.

21.     It was a further object of the conspiracy and scheme to defraud that, as of October 2018, the defendant **KEON BALL**, alone or in concert with others, incurred or caused to be incurred $47,898.12 in purchases on the LAR account he fraudulently established in the name of "JS," resulting in interstate wires, including wires to and from Maryland.

22.     It was further part of the conspiracy and scheme to defraud that, as of October 2018, the defendant **KEON BALL**, alone or in concert with others, incurred or caused to be incurred $105,442.59 in purchases on the LAR account he fraudulently established in the name of "JL," resulting in interstate wires, including wires to and from Maryland.

23.     It was further part of the conspiracy and scheme to defraud that, as of October 2018, the defendant **KEON BALL**, alone or in concert with others, incurred or caused to be incurred $27,649.18 in purchases on the LAR account he fraudulently established in the name of "JE," resulting in interstate wires, including wires to and from Maryland.

24.     It was further part of the conspiracy and scheme to defraud that, as of October 2018, the defendants **KEON BALL** and **ROBERT HOPKINS IV**, alone or in concert with others, incurred or caused to be incurred $72,493.00 in purchases on the LAR account **BALL** fraudulently established in the name of "RB," resulting in interstate wires, including wires to and from Maryland.

25.     It was further part of the conspiracy and scheme to defraud that on or about October 16, 2019, the defendant **ROBERT HOPKINS IV** purchased a compact track loader, SN 1T0325GKEKJ356997, and a compact excavator, SN 1FF035GXJKK286509 from a Jesco location in the District of Maryland by means of a loan from John Deere Financial in the amount of $128,518.56 fraudulently obtained using the name of "DB," resulting in interstate wires, including wires to and from Maryland.

26.     It was further part of the conspiracy and scheme to defraud that on or about October 29, 2019, the defendant **ROBERT HOPKINS IV** purchased a mini excavator, SN B3Y112977, and compact track loader, SN B3NK34304, from Metro Bobcat in the District of Maryland by means of a loan from Wells Fargo in the amount of $102,155.00 fraudulently obtained using the name of "DB," resulting in interstate wires, including wires to and from Maryland.

27.     It was further part of the conspiracy and scheme to defraud that in or about October 2019, the defendant **ROBERT HOPKINS IV** used a counterfeit Florida Driver's License bearing the name of "DB" and the photograph of the defendant, **ROBERT HOPKINS IV**, the year of birth of 1977, and the license number ending in 1350 in connection with the purchases from Jesco and Metro Bobcat.

28.     It was further part of the conspiracy and scheme to defraud that on or about October 16, 2019, the defendant **ROBERT HOPKINS IV** accepted delivery of the construction equipment purchased from Jesco at 2020 Mosher Street in Baltimore, Maryland.

29.     It was further part of the conspiracy and scheme to defraud that on or about October 30, 2019, the defendant **ROBERT HOPKINS IV** accepted delivery of the construction equipment purchased from Metro Bobcat at 2020 Mosher Street in Baltimore, Maryland.

30.     It was further part of the conspiracy and scheme to defraud that the defendants

**KEON BALL** and **ROBERT HOPKINS IV** made no legitimate payments to Synchrony in connection with the LAR accounts **BALL** fraudulently established in the names of "JS," "JL," "RB," and "JE," and each of the LAR accounts have outstanding balances.

31.     It was further part of the conspiracy and scheme to defraud that the defendants **KEON BALL** and **ROBERT HOPKINS IV** made no payments to John Deere Financial or Wells Fargo in connection with the purchases of heavy construction equipment from Jesco and Metro Bobcat that were fraudulently made in the name of "DB."

18 U.S.C. § 1349

## COUNTS TWO THROUGH TWENTY-ONE
## (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1.     The allegations set forth in Paragraphs 1 through 10 and 12 through 31 of Count One of the Superseding Indictment are incorporated here.

2.     On or about the dates listed below, in the District of Maryland, and elsewhere, the defendant,

**KEON BALL,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud businesses and individuals, including Lowe's and Synchrony, to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## THE CHARGES

3.     On or about the dates set forth below, in the District of Maryland and elsewhere, **BALL**, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds:  to wit, the following fraudulent purchases resulting in interstate wires from a location within the District of Maryland to Synchrony's servers located outside of the District of Maryland,  as set forth below:

8

| COUNT | DATE | VICTIM NAME ASSOCIATED WITH LAR ACCOUNT | AMOUNT OF FRAUDULENT PURCHASE |
|---|---|---|---|
| 2 | May 9, 2018 | JS | $14,617.02 |
| 3 | May 12, 2018 | JS | $ 1,228.74 |
| 4 | May 24, 2018 | JS | $5,168.75 |
| 5 | May 24, 2018 | JS | $2,819.60 |
| 6 | May 24, 2018 | JS | $681.91 |
| 7 | May 24, 2018 | JS | $3,979.26 |
| 8 | May 24, 2018 | JS | $926.40 |
| 9 | August 27, 2018 | JL | $12,545.76 |
| 10 | September 1, 2018 | JL | $1,141.52 |
| 11 | September 1, 2018 | JL | $149.56 |
| 12 | September 2, 2018 | JL | $2,472.72 |
| 13 | September 2, 2018 | JL | $2,559.76 |
| 14 | September 2, 2018 | JL | $6,969.52 |
| 15 | September 20, 2018 | RB | $2109.13 |
| 16 | September 20, 2018 | RB | $8760.59 |
| 17 | September 28, 2018 | RB | $5,189.76 |
| 18 | September 28, 2018 | RB | $12,653.66 |
| 19 | September 29, 2018 | RB | $6,024.11 |
| 20 | October 19, 2018 | JE | $5,218.88 |
| 21 | October 19, 2018 | JE | $2,592.45 |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT TWENTY-TWO
## (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1.      The allegations set forth in Paragraphs 1 through 10 and 12 through 31 of Count One of the Superseding Indictment are incorporated here.

2.      On or about the date listed below, in the District of Maryland, and elsewhere, the defendant,

**ROBERT HOPKINS IV,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud businesses and individuals, including Lowe's and Synchrony, to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## THE CHARGE

3.      On or about the date set forth below, in the District of Maryland and elsewhere, **HOPKINS**, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds:  to wit, the following fraudulent purchase resulting in an interstate wire from a location within the District of Maryland to Synchrony's servers located outside of the District of Maryland, as set forth below:

| COUNT | DATE | VICTIM NAME ASSOCIATED WITH LAR ACCOUNT | AMOUNT OF FRAUDULENT PURCHASE |
|---|---|---|---|
| 22 | September 21, 2018 | RB | $7,432.21 |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT TWENTY-THREE
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1.      The allegations set forth in Paragraphs 1 through 10 and 12 through 31 of Count One of the Superseding Indictment are incorporated here.

2.      From in or about May 2018 and continuing until in or about October 2019, in the District of Maryland and elsewhere, the defendants,

**KEON BALL and**
**ROBERT HOPKINS IV,**

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another person, to wit: the defendants used the means of identification of various individuals, "JS," "JL," "RB," and "JE," during and in relation to conspiracy to commit wire fraud under 18 U.S.C § 1349, as set forth in Count One of the Superseding Indictment.

18 U.S.C. §§ 1028A(a)(1), (c)(5)
18 U.S.C. § 2

## COUNT TWENTY-FOUR
### (Felon in Possession of a Firearm and Ammunition)

The Grand Jury for the District of Maryland further charges that:

On or about February 5, 2019, in the District of Maryland and elsewhere, the defendant,

**KEON BALL,**

possessed in and affecting commerce a firearm and ammunition, that is, a Colt .38 caliber revolver, bearing serial number 927486 and ammunition, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and did so knowingly.

18 U.S.C. § 922(g)

## COUNT TWENTY-FIVE THROUGH TWENTY-EIGHT
### (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

### General Allegations

1.        The allegation set forth in Paragraph 1 of Count One of the Superseding Indictment is incorporated here.

2.        The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.  The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3.        As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

4.        One of these new programs is the SBA Paycheck Protection Program ("PPP"), which is a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA will forgive all or part of loans if all employees were kept on the payroll for eight weeks and borrowers submit documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities. Interested applicants apply through an existing SBA lender or any other participating federally insured financial institution.

5.        The PPP application process requires applicants to submit a Borrower Application

Form through an SBA-approved financial entity. The application contains information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. Applicants are also required to make good faith certifications, including that economic uncertainties have necessitated their loan requests for continued business operations and that they intend to use loan proceeds only for the authorized and not any duplicative purposes.

6.      Question 5 of the PPP Borrower Application Form reads "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?"  As such, applicants with pending criminal charges and/or who are on any form of parole or probation are ineligible for PPP loans.

## PPP Applications

7.      On or about June 19, 2020, **BALL** applied for a PPP loan through a financial institution ("Bank-1") for a company called Endless Construction LLC.  On this application, **BALL** claimed that the business had eight (8) employees with an average monthly payroll of $49,574.00.  **BALL** claimed that the purpose of the loan was for payroll expenses.

8.      In response to Question 5 of the PPP Borrower Application Form (supra at 6) **BALL** checked "NO" for this question, indicating that he was not  subject to criminal charges, and electronically signed his initials, verifying the accuracy of his response.

9.      In fact, **BALL** was facing state criminal charges at the time of the application, and those charges remain pending.

10.     Question 6 of the PPP Borrower Application asked "Within the last 5 years, for any

15

felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted: 2) pleaded guilty: 3) pleaded nolo contendere: 4) been placed on pretrial diversion; 5) been placed on any form of parole or probation (including probation before judgment)"?  **BALL** checked "NO" for this question and electronically signed his initials, verifying the accuracy of his response.

11.     In fact, **BALL** was and is currently on supervised state probation as a result of a previous state conviction.

12.     In connection with the application, **BALL** also provided Bank-1 a fraudulent Internal Revenue Service ("IRS") Form W3, known as "Transmittal of Wage and Tax Statements" to substantiate, among other things, the number of purported employees on his payroll for Endless Construction LLC for the tax year covering 2019 and/or 2020.

13.     However, the IRS has searched its records for Endless Construction LLC, and the IRS has no records of any filed tax records for any part of 2019 or 2020 for the business.

14.     **BALL** electronically signed this PPP application on June 19, 2020, attesting that the information provided was true and accurate and that he understood the criminal penalties associated with providing false statements to the SBA.

15.     On or about July 17, 2020, **BALL** applied for a PPP loan through Bank-1 for a company called Charm City Realty, LLC.  On this application, **BALL** claimed that the business had eleven (11) employees with an average monthly payroll of $132,730.00.  **BALL** claimed that the purpose of the loan was for payroll, lease/mortgage interest, and other expenses.

16.     Question 5 of the PPP Borrower Application Form asked "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an

16

indictment, criminal information, arraignment or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?" **BALL** checked "NO" for this question and electronically signed his initials, verifying the accuracy of his response.

17.    Question 6 of the PPP Borrower Application asked "Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted: 2) pleaded guilty: 3) pleaded nolo contendere: 4) been placed on pretrial diversion; 5) been placed on any form of parole or probation (including probation before judgment)"? **BALL** checked "NO" for this question and electronically signed his initials, verifying the accuracy of his response.

18.    In connection with the application, **BALL** also provided Bank-1 a fraudulent IRS Form W3 to substantiate, among other things, the number of purported employees on his payroll for Charm City Realty, LLC for the tax year covering 2019 and/or 2020.

19.    However, the IRS has searched its records for Charm City Realty, LLC, and the IRS has no records of any filed tax records for any part of 2019 or 2020 for the business.

20.    **BALL** electronically signed this PPP application on July 17, 2020, attesting that the information provided was true and accurate and that he understood the criminal penalties associated with providing false statements to the SBA.

### The Scheme to Defraud

21.    Beginning in or about June 2020 and continuing through in or about July 2020, in the District of Maryland and elsewhere, the defendant,

**KEON BALL,**

17

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud businesses, including Bank-1, to obtain property by means of materially false and fraudulent pretenses, representations, and promises.

### The Object of the Scheme to Defraud

22.     It was the object of the scheme to defraud that **BALL** sought to obtain fraudulently disaster-related benefits in the form of SBA PPP loans.

### Manner and Means of the Scheme to Defraud

23.     It was part of the scheme to defraud that **BALL** submitted applications for loans under the PPP program that contained false statements, misrepresentations and omissions related to his prior criminal record, his probation status, and his businesses, including their payroll and number employees.

24.     It was further a part of the scheme to defraud that **BALL** falsely attested on the aforementioned loan applications that the information presented was true and accurate.

25.     It was further a part of the scheme to defraud that **BALL** opened two BB&T bank accounts—one with an Account # ending in 94841 and the other with an Account # ending in 94833—using the means of identification of "BT," and including the exact date of "BT's" birthdate in year 1979 and "BT's" social security number ending in 9875.

26.     It was further a part of the scheme to defraud that **BALL** on or about June 19, 2020 received and obtained $123,934.00 in PPP proceeds in the BB&T Account # ending in 94833.

27.     It was further a part of the scheme the scheme to defraud that **BALL** on or about July 17, 2020 received and obtained $132,730.00 in PPP proceeds in the BB&T Account # ending in 94841.

28.     It was further a part of the scheme to defraud that **BALL** caused the transmission of information and funds by wire between the District of Maryland and locations outside of Maryland.

## THE CHARGES

29.     On or about the date set forth below, in the District of Maryland and elsewhere, **BALL**, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds:  to wit, the following SBA PPP applications and wire transfers of funds to/through/from a location within the District of Maryland to/from/through a location outside of the District of Maryland, as set forth below:

| COUNT | DATE | DESCRIPTION OF WIRE TRANSMISSION | INTERSTATE WIRE COMMUNICATION DETAILS |
|---|---|---|---|
| 25 | June 19, 2020 | **BALL** submitted an SBA PPP loan application through Bank-1 for Endless Construction, LLC that contained false statements and misrepresentations and omissions related to his business entity, employment, payroll, criminal history, and probation status. | Maryland to Bank-1's servers outside of Maryland |
| 26 | June 23, 2020 | **BALL** received the proceeds of a PPP loan for Endless Construction, LLC in the amount of $123,934.00 into a BB&T account he had opened using the means of identification of "BT." | ACH transfer of funds from outside of Maryland to Maryland |
| 27 | July 17, 2020 | **BALL** submitted an SBA PPP loan application through Bank-1 for Charm City Realty, LLC that contained false statements and misrepresentations and omissions related to his business entity, employment, payroll, criminal history, and probation status. | Maryland to Bank-1's servers outside of Maryland |

| 28 | July 21, 2020 | **BALL** received the proceeds of a PPP loan for Charm City Realty, LLC in the amount of $132,730.00 into a BB&T account he had opened using the means of identification of "BT." | ACH transfer of funds from outside of Maryland to Maryland |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT TWENTY-NINE
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1.      The allegations set forth in Paragraphs 1 through 21 and 23 through 28 of Counts Twenty-Five through Twenty-Eight of the Superseding Indictment are incorporated here.

2.      From in or about June 2020 and continuing until in or about July 2020, in the District of Maryland and elsewhere, the defendant,

**KEON BALL**,

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another person, to wit: the defendant used the means of identification of "BT" during and in relation to wire fraud under 18 U.S.C § 1343 as set forth in Counts Twenty-Five through Twenty-Eight of the Superseding Indictment.

18 U.S.C. §§ 1028A(a)(1), (c)(5)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 924(d), 981(a)(1)(C), and 982(a)(2)(A), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under any of the offenses in Counts One through Twenty-Two or Twenty-Four through Twenty-Eight of this Superseding Indictment.

### Wire Fraud Forfeiture

2.      Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of any of the offenses set forth in Counts One through Twenty-Two or Twenty-Four through Twenty-Eight of this Superseding Indictment, the defendants,

**KEON BALL and
ROBERT HOPKINS IV**

shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the scheme to defraud.

### Firearms Forfeiture

4.      Pursuant to 18 U.S.C. § 924(d), upon conviction of Count Twenty-Four, the defendant,

**KEON BALL**

shall forfeit to the United States any firearm or ammunition involved in or used to commit the offense, including, but not limited to, a Colt .38 caliber revolver bearing serial number 927486 and ammunition.

**Substitute Assets**

5.      If any of the property described above, as a result of any act or omission of the

defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided
            without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C.

§ 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 924(d)
18 U.S.C. § 982(a)(2)(A)
28 U.S.C. § 2461(c)
Fed. R. Crim. P. 32.2(a)


*Jonathan F. Lenzner/par*
Jonathan F. Lenzner
Acting United States Attorney

A TRUE BILL

_____
Foreperson


Date: _____

23